**EAT'N PARK RESTAURANTS BUSINESS TRUST,**
Petitioner,

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2002.

Decided July 22, 2002.

Charles L. Potter, Jr., Pittsburgh, for petitioner.

Michael A. Roman, Harrisburg, for petitioner.

Before FRIEDMAN, Judge, and LEADBETTER, and Judge, FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Eat 'n Park Restaurants Business Trust (Petitioner) petitions for review of an order of the Board of Finance and Revenue (Board) subjecting Petitioner to corporate net income (CNI) tax for the 1995 tax year. We affirm.

Based on a Stipulation of Facts entered into by the parties and the briefs of both parties, the following facts became evident: Currently, Petitioner is organized as a business trust and maintains its accounting records on a 52–53 week basis. The 52–53 week period at issue in this case began on December 27, 1994 and ended on December 25, 1995. Prior to 1993, Petitioner was organized as a corporation. In 1993, Petitioner reorganized into a business trust under 15 Pa.C.S. § 9501, *et seq.*, which allowed it to escape the imposition of CNI tax. This avoidance of tax was made possible because the definition of "corpora-

tion" in 72 P.S. § 7401, which is located in Article IV (Corporate Net Income Tax), Part I (Definitions) of the Tax Reform Code (Code)[1] did not include business trusts. To close this tax loophole, the Legislature amended the definition of "corporation" to include business trusts by enacting Act 48 of 1994.[2] In addition, the Legislature provided in Section 43(1) of Act 48 that "[t]he amendment of sections 301, 401 and 601 of the act pertaining to business trusts and net loss deductions shall apply to all taxable years beginning on or after January 1, 1995." When Petitioner filed its 1995 CNI tax return, it indicated that it did not owe any tax because the tax period began before January 1, 1995 and the Act 48 amendments only apply to tax years beginning after January 1, 1995. Therefore, Petitioner contends that it would not be subject to CNI tax until its 1996 fiscal year, which would begin on December 26, 1995.

On May 20, 1998, the Pennsylvania Department of Revenue (Revenue) settled Petitioner's CNI tax by increasing its liability from $0 to $190,363.00 plus $2,154.00 in penalties. Petitioner filed a petition for resettlement with the Board of Appeals, which was denied. Petitioner appealed to the Board, which concluded that, pursuant to 72 P.S. § 7401(3)(k) of the Code, Petitioner is deemed a calendar year taxpayer with an ending date of December 31 because its 52–53 week fiscal year ends during the last seven days of December. Thus, the Board denied resettlement because, by operation of statute, the tax year at issue began after January 1, 1995. This appeal followed.[3]

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7601.

2. Act of June 16, 1994, No. 48, Section 13, P.L. 279.

3. "In appeals from decisions of the Board, we have the broadest scope of review because the Commonwealth Court functions as a trial court, even though such cases are heard in our appellate jurisdiction." *Shawnee Development, Inc. v. Commonwealth of Pennsylvania*, 764 A.2d 659, 660 (Pa.Cmwlth.2000).

Petitioner presents the following questions for our review: 1) whether Section 7401(3)(k) of the Code applies to CNI tax, 2) if Petitioner is subject to CNI tax for the 1995 tax year, whether Petitioner is entitled to a special depreciation deduction of $64,381 for "Section 1250 property"[4] from its taxable income pursuant to 61 Pa.Code § 153.14(3), 3) whether the Board's interpretation of the Code violates Petitioner's equal protection rights, 4) whether Petitioner should receive an abatement of penalties, and 5) whether Petitioner is entitled to attorney fees.

■ First, we must address whether Petitioner is subject to CNI tax. Section 7401(3)(k) of the Code, which is located in Article IV (Corporate Net Income Tax), Part I (Definitions), provides that:

(k) A taxpayer reporting on a 52–53 week basis which closes its fiscal year on any of the last seven days in December or the first seven days of January is deemed a calendar year taxpayer with a year ending date of December 31.

Petitioner argues that Section 7401(3)(k) of the Code does not apply to CNI tax because 72 P.S. 7401(5), located in Article IV, Part 1 of the Code, provides that:

(5) "Taxable year." The taxable year which the corporation, or any consolidated group with which the corporation participates in the filing of consolidated returns, **actually uses in reporting taxable income to the Federal Government.** With regard to the tax imposed by Article IV of this act (relating to the Corporate Net Income Tax), the terms "annual year," "fiscal year," "annual or

fiscal year," "tax year" and "tax period" shall be the same as the corporation's taxable year, as defined in this paragraph.

(emphasis added). Petitioner argues that because December 27, 1994 to December 25, 1995 is the year which it "actually uses in reporting taxable income", it is not subject to CNI tax because its tax year began before January 1, 1995.

Respondent counters that Section 7401(3)(k) of the Code, which is located in the same Article and Part as the definition of "taxable year," operates to change a taxpayer's taxable year when its fiscal year falls during the last week of December or first week of January.

In support of their respective positions, both parties cite the case of *Allentown Wholesale Grocery Company v. Com.*, 5 Pa.Cmwlth. 426, 291 A.2d 336 (1972), wherein the sole question before this Court was whether a 52–53 week accounting period constituted a fiscal year basis of accounting or a calendar year basis of accounting. The Commonwealth took the position that Allentown, whose tax year began on December 29, 1968 and ended on December 27, 1969, should be treated as a calendar year taxpayer and thus subject to the 1969 tax year's higher tax rates for CNI tax and capital stock tax. In rejecting the Commonwealth's position, this Court stated that:

*In the absence of a legislative definition clearly indicating otherwise, we find the authorized 52–53 week accounting period to be a fiscal year basis of accounting and not a calendar year basis which is*

---

Additionally, Pa. R.A.P. 1571(f) and (h) provide that the questions raised in the petition for review shall be determined on the record made before this Court and that the parties may enter into a Stipulation of Facts setting forth those facts that are agreed upon and any issues of fact which remain to be tried.

4. "Section 1250 property" refers to Section 1250 of the Internal Revenue Code, 26 U.S.C. § 1250 "Gains from dispositions of certain depreciable property."

limited to beginning with January 1 and ending with December 31.

*Id.* at 338 (emphasis added). In reaching this decision, our Court relied on the rules of statutory construction:

> We are guided in analyzing the statutory provisions here applicable by certain well settled principles of statutory construction which were enunciated by Mr. Chief Justice (then Justice) Jones in *Commonwealth v. Rieck Investment Corporation*, 419 Pa. 52, 59, 60, 213 A.2d 277 (1965), (a) that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer; (b) even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the statute is clear and unambiguous the statute must be given its plain and obvious meaning; (c) the "legislature must be intended to mean what it has plainly expressed.... It matters not, in such a case, what the consequences may be"; (d) it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include. (Citations omitted).

*Id.* at 338–339.

In the case *sub judice*, there exists a "legislative definition clearly indicating otherwise", i.e. Section 7401(3)(k) of the Code, which is located in Article IV and which addresses CNI tax. This Section operates to modify the definition of "taxable year" in Section 7401(5) of the Code for taxpayer's whose fiscal year, or taxable year, falls on the last seven days or first seven days of the year. Here, the legislative intent could not be clearer. Accordingly, Petitioner is subject to CNI tax for the 1995 tax year. Therefore, the order of the Board in this regard is affirmed.

■ Given our decision that Petitioner is subject to CNI tax for the 1995 tax year, we must also address whether Petitioner is entitled to a special depreciation deduction for its Section 1250 property. The relevant Revenue regulation provides that:

> (3) Special deduction for section 1250 of the IRC (26 U.S.C.A. § 1250) property depreciated on an accelerated depreciation basis when the accelerated depreciation falls below straight line depreciation. This adjustment may be taken in accordance with the following:
>
> (i) A taxpayer depreciating section 1250 of the IRC (26 U.S.C.A. § 1250) property on an accelerated depreciation basis is permitted a special deduction to taxable income to be apportioned when the accelerated depreciation falls below straight line depreciation. The amount of the deduction for a tax year is limited to the amount of depreciation below straight line. **The aggregate adjustment to taxable income to be apportioned for amounts below straight line may not exceed the aggregate of the amount added to taxable income to be apportioned in previous tax years.**

61 Pa.Code § 153.14(3) (emphasis added).

Respondent takes the position that Petitioner is not permitted to take a special deduction pursuant to Section 153.14(3) of the Code because the amount it may deduct "may not exceed the aggregate of the amount added to taxable income to be apportioned in previous tax years." Respondent explains that Federal deductions for accelerated depreciation are larger than Pennsylvania straight line depreciation when property is first put into service. Thus, the amount by which the Federal deduction exceeds the Pennsylvania deduction must be "added back" to Pennsylvania taxable income pursuant to 72 P.S. § 7401(3)1(d)(ii) of the Code, which provides that:

Taxable income will include the sum of the following tax preference items as defined in section 57 of the Internal Revenue Code ... (ii) accelerated depreciation on real property ...

The effect of the regulation is to "maintain the overall effect of straight line depreciation" when, in later years, the amount of the Federal deduction falls below the Pennsylvania deduction. This deduction, however, is limited to the amounts added back in previous years. Respondent argues that because Petitioner successfully avoided paying CNI tax in previous years by reorganizing as a business trust, the regulation operates to prohibit it from taking a special deduction because it had no taxable income to which excess depreciation might have been added. Furthermore, the regulation, which is the sole authority for the special deduction, does not authorize a deduction based on "add backs" made by a predecessor entity. Additionally, Respondent argues that there is nothing in the record establishing that any predecessor business entity made any add backs, nor does anything in the record establish the amount of the add backs alleged to have been made.

Petitioner admits that the business trust "Eat 'n Park" was not subject to CNI tax in previous years and did not add back any accelerated depreciation in previous periods. However, Petitioner argues that because "Eat 'n Park" is the sole survivor of a 1993 merger with the corporation "Eat 'n Park Restaurants, Inc.", which did have accelerated depreciation in previous years, it should be allowed to take the special deduction. In the present controversy, Petitioner failed to provide sufficient evidence that it or its predecessor added back any depreciation in prior years. Therefore, Petitioner failed to meet its burden of proof and we must affirm on this issue as well.

Next Petitioner contends that the "interpretation of the statute urged by the Commonwealth results in a violation of the equal Protection Clause of the United States Constitution, the Uniformity Clause of the Constitution of Pennsylvania, and Article 3, § 32 of the Pennsylvania Constitution which prohibits special laws." Petitioner's Brief at 18.

Petitioner is not treated any differently than any other similarly situated taxpayer who elected a 52–53 week fiscal period that ends within seven days of January 1 and is thus subject to Section 7401(3)(k) of the Code. There are no constitutional violations of Petitioner's rights.

Finally Petitioner argues that the penalties applied to it should be abated and that they should be awarded attorney fees. As there is nothing of record to support an abatement of penalties and Petitioner did not succeed on any of the issues before this Court, we must deny these requests as well.

Accordingly, we affirm the decision of the Board.

### ORDER

AND NOW, July 22, 2002, The order of the Board dated June 22, 1999 and docketed at 9819450 ordering Petitioner to pay corporate net income tax for the 1995 tax year is hereby affirmed. Exceptions may be filed within 30 days of the date of this order. Pa.R.A.P. 1571(i).