**EAT'N PARK RESTAURANTS BUSINESS TRUST,**
Petitioner,

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

**Eat'n Park Restaurants Business Trust, Petitioner,**

v.

**Commonwealth of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 2003.
Decided March 26, 2003.

---

Charles L. Potter, Jr., Pittsburgh, for petitioner.

Michael A. Roman, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and McGINLEY, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, COHN, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEADBETTER.

Consolidated before the court en banc are exceptions filed to two companion decisions of a panel of this court addressing taxpayer Eat'n Park Restaurants Business Trust's liability for corporate net income (CNI) tax and capital stock tax for the 1995 tax year. The taxpayer has excepted to our affirmance of the Board of Finance and Revenue's order subjecting taxpayer to CNI tax. *See Eat'n Park Restaurants Business Trust v. Commonwealth*, 803 A.2d 845 (Pa.Cmwlth.2002). The Commonwealth has excepted to our reversal of the Board's order subjecting taxpayer to capital stock tax. *See Eat'n Park Restaurants Business Trust v. Commonwealth*, 802 A.2d 1280 (Pa.Cmwlth.2002). The overarching issue in both appeals is whether a 1994 amendment to the definitions of "corporation" and "domestic entity" to include business trusts renders taxpayer liable for CNI and capital stock tax for the tax year at issue.

### Corporate Net Income Tax

We will first address taxpayer's exceptions to our decision affirming taxpayer's liability for CNI tax. The factual history was comprehensively stated in the prior panel decision, *Eat'n Park Restaurants Business Trust*, 803 A.2d 845. Prior to the 1994 statutory amendment, taxpayer was not subject to CNI tax because the definition of "corporation" in Section 401 of Part I (Definitions) of Article IV (Corporate Net Income Tax) of the Tax Reform Code (Code),[1] 72 P.S. § 7401, did not include business trusts. To close this tax

---

1. Act of March 4, 1971, P.L. 6, *as amended.*

loophole, the legislature enacted Act 48 of 1994[2] and amended the definition of "corporation" in Section 401 to include business trusts, thereby subjecting business trusts to CNI tax liability.[3] Section 43(1) of Act 48 provides that "[t]he amendment of sections 301, 401 and 601 of the act pertaining to business trusts and net loss deductions shall apply to all *taxable years* beginning on or after January 1, 1995 [emphasis added]."

As noted by the panel, taxpayer maintains its accounting records on a 52–53 week basis. In *Allentown Wholesale Grocery Co. v. Commonwealth*, 5 Pa.Cmwlth. 426, 291 A.2d 336 (1972), this court explained the 52–53 week basis of accounting:

> A 52–53 week year is an accounting period which does not necessarily end on the last day of any month. The period begins on the same day of the week, 52–53 weeks after the beginning of the period which may begin during any calendar month. The use of the 52–53 week year permits a corporation to divide a calendar year into thirteen uniform and more comparable periods of time to facilitate the keeping of accounting records.

291 A.2d at 337.

The relevant 52–53 week period in this case began on December 27, 1994 and ended on December 25, 1995. Taxpayer filed its 1995 CNI tax return, indicating that it did not owe any tax because its tax period began before January 1, 1995, and the Act 48 amendments applied only to tax years beginning after January 1, 1995. The Department of Revenue disagreed, and settled taxpayer's CNI tax by increasing its liability from $0 to $190,363.00 plus

penalties. Taxpayer subsequently petitioned for resettlement, which was denied by the Board of Appeals. On appeal, the Board concluded that pursuant to Section 401(3)1(k) of the Code, 72 P.S. § 7401(3)1(k), taxpayer is deemed to be a calendar year taxpayer with a year ending date of December 31 because its 52–53 week reporting period ends during the last seven days of December. The Board therefore concluded that by operation of statute, taxpayer's tax year began on January 1, 1995, rendering it liable for CNI tax. Consequently, the Board denied resettlement. This court affirmed and the present exceptions followed.

In support of its exceptions, taxpayer first points out that the legislature clearly tied the implementation of Act 48 to the term "taxable year" and limited its application to those taxable years beginning on or after January 1, 1995. Taxpayer contends that pursuant to the statutory definition of "taxable year," its taxable year commenced on December 27, 1994. Section 401(5) defines the term "taxable year" as:

> The taxable year which the corporation . . . actually uses in reporting taxable income to the Federal Government. With regard to the tax imposed by Article IV of this act (relating to the Corporate Net Income Tax), the terms "annual year," "fiscal year," "annual or fiscal year," "tax year" and "tax period" shall be the same as the corporation's taxable year, as defined in this paragraph.

72 P.S. § 401(5). Taxpayer argues that because December 27, 1994 to December 25, 1995 is the year which "it actually uses in reporting taxable income to the Federal Government," its taxable year began before January 1, 1995.

---

**2.** Act of June 16, 1994, P.L. 279 (Act 48).

**3.** The CNI tax applies to "every corporation" that does business in Pennsylvania, or carries on activities in Pennsylvania, or owns capital or property employed or used in Pennsylvania, or owns property in Pennsylvania. Section 402 of the Code, 72 P.S. § 7402.

The Commonwealth, on the other hand, relies upon Section 401(3)1(k). That provision, a subsection of the definition of "taxable income," provides that "[a] taxpayer reporting on a 52–53 week basis which closes its fiscal year on any of the last seven days in December or the first seven days of January is deemed a calendar year taxpayer with a year ending date of December 31." 72 P.S. 7401(3)1(k). The Commonwealth asserts that Section 401(3)1(k) controls. The Commonwealth notes that there are two types of taxpayers, fiscal and calendar, and argues that Section 401(3)1(k) is specific statutory authority to treat a particular group of fiscal year taxpayers as calendar year taxpayers.

Taxpayer responds that the terms "calendar year" and "taxable year" cannot be used interchangeably and neither the implementation provision of Act 48 nor the definition of "taxable year" references calendar years. Therefore, since the legislature tied the effective date of Act 48 to the specifically defined "taxable year," that directive is controlling. Moreover, according to taxpayer, '[i]f the legislature intended that a 52–53 week taxpayer have a 'taxable year' other than the taxable year 'actually use[d] in reporting taxable income to the Federal Government' it would have so provided within this new definition [of taxable year][§ 401(5) ]." Taxpayer's brief at 14–15. Both parties rely on *Allentown Wholesale Grocery Co. v. Commonwealth,* 5 Pa.Cmwlth. 426, 291 A.2d 336 (1972) to support their arguments.

In *Allentown Wholesale Grocery* this court addressed the issue of whether a 52–53 week accounting period ending the last Saturday of December constituted a fiscal year or calendar year. A 1969 amendment that increased the CNI and capital stock tax rates applied to tax imposed for calendar year 1969 and thereafter, or to fiscal years beginning in 1969 and thereafter. The Commonwealth argued that the taxpayer, whose tax year began on December 29, 1968 and ended on December 27, 1969, should be treated as a calendar year taxpayer and subject to the higher tax rates applicable to the 1969 tax year. In rejecting the Commonwealth's position, this court stated:

> *In the absence of a legislative definition clearly indicating otherwise,* we find the authorized 52–53 week accounting period to be a fiscal year basis of accounting and not a calendar year basis which is limited to beginning with January 1 and ending with December 31.

*Id.* at 338 [emphasis added]. The court then concluded that the statutory language clearly expressed the legislature's intent that for corporations filing on a fiscal year basis, the tax rate increase should apply only to fiscal years beginning in 1969 and thereafter. Therefore, we held that the tax increase was not applicable to taxpayer's fiscal year beginning in late December of 1968. *Id.* at 338.[4]

---

4. The court also noted that it employed the following rules of statutory construction:

> We are guided in analyzing the statutory provisions here applicable by certain well settled principles of statutory construction ... (a) that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer; (b) even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the

statute is clear and unambiguous the statute must be given its plain and obvious meaning; (c) the legislature must be intended to mean what it has plainly expressed.... It matters not, in such a case, what the consequences may be; (d) it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.

*Id.* at 1283, quoting *Commonwealth v. Rieck Investment Corp.,* 419 Pa. 52, 59–60, 213 A.2d 277 (1965) (quotations and citations omitted).

■ The panel found *Allentown Wholesale Grocery* distinguishable, and affirmed the Board stating, "there exists [in this case] a 'legislative definition clearly indicating otherwise,' *i.e.* Section 7401(3)[1](k) of the Code, which is located in Article IV and which addresses CNI tax. *Eat'n Park Restaurants Business Trust*, 803 A.2d at 848. We agree with this analysis. Since the decision in *Allentown Wholesale Grocery*, the CNI article of the tax code has been specifically amended to deem the set of taxpayers that report on a 52–53 week fiscal period ending during the last seven days of December to be calendar year taxpayers. Therefore, we conclude that the Board did not err in applying the Act 48 amendments to taxpayer and imposing CNI tax liability.

Nonetheless, taxpayer argues that Section 401(3)1(k) is no longer effective because it is irreconcilable with Section 401(5)'s definition of "taxable year," which was added to the Code four years later.[5] In support, taxpayer relies on Section 1936 of the Statutory Construction Act of 1972, which provides:

> Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.

1 Pa.C.S. § 1936. On the contrary, we agree with the Commonwealth that if the two provisions are deemed to be irreconcilable, Section 401(3)1(k) should prevail as it is a special provision and there is no manifest intent that the legislature intended the later enacted general provision defining

"taxable year" to prevail.[6] To accept taxpayer's argument in this regard would render Section 401(3)1(k) entirely meaningless. Had the General Assembly intended to repeal Section 401(3)1(k), we believe it would have done so explicitly. Since it was left extant as a part of the CNI tax provisions we must give it meaning, and thus it controls the more general, albeit later, provision.

■ Taxpayer also seeks a special depreciation deduction pursuant to 61 Pa. Code § 153.14(3) for its Section 1250 property. The Department denied the deduction, finding it was unavailable because taxpayer had not paid CNI tax in previous years. This court fully discussed the requested deduction in the underlying panel opinion and concluded that taxpayer had failed to provide sufficient evidence to meet its burden of proving an entitlement to the deduction. *See Eat'n Park Restaurants Business Trust*, 803 A.2d at 848–49. We incorporate that discussion herein and deny taxpayer's exception for the same reasons.

■ Next, taxpayer contends that the "interpretation of the statute urged by the Commonwealth results in a violation of the Equal Protection Clause of the United States Constitution, the Uniformity Clause of the Constitution of Pennsylvania, and Article 3, § 32 of the Pennsylvania Constitution which prohibits special laws." Taxpayer's brief at 22. Taxpayer also requests attorney's fees on the basis that the Commonwealth, through the Department,

---

**5.** Section 401(3)1(k) was added in 1981 and the definition of "taxable year" in Section 401(5) was added in 1985.

**6.** In this regard, the Commonwealth cites Section 1933 of the Statutory Construction Act, 1 Pa.C.S. § 1933, which provides that when a general and special statutory provision are irreconcilable and cannot be con-

strued such that each can be given effect, "the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail."

has deprived it of rights, privileges and immunities secured by the federal Constitution in violation of 42 U.S.C. § 1983. As the panel concluded, taxpayer "is not treated any differently than any other similarly situated taxpayer who elected a 52–53 week fiscal period that ends within seven days of January 1 and is thus subject to Section 7401(3)[1](k) of the Code. There are no constitutional violations of [taxpayer's] rights." *Eat'n Park Restaurants Business Trust*, 803 A.2d at 849. Because we have concluded that there is no merit to taxpayer's constitutional argument, we do not address its contention that an unconstitutional tax classification entitles a taxpayer to attorney's fees under 42 U.S.C. § 1983.

■ Finally, taxpayer seeks an abatement of penalties, contending that it acted in good faith without intent to defraud in construing the applicability of the Act 48 amendments. The panel denied this request on the basis that taxpayer did not prevail on any of its arguments on the merits. However, this does not appear to be the appropriate standard. Section 403(d) of the Code, 72 P.S. § 7403(d), authorizes the Department to impose penalties as follows:

> If the officers of any corporation shall neglect, or refuse to make any report as herein required, or shall knowingly make any false report, the following percentages of the amount of the tax shall be added by the department to the tax determined to be due. . . .

Here, it is stipulated that taxpayer filed a report as required. There is no allegation that the report contained any inaccurate information about its income. Rather, it stated that no tax was due because it was not subject to the tax for that period (a fiscal year beginning December 27, 1994). While we disagree with taxpayer's interpretation of Act 48, it is not so frivolous as to amount to bad faith, and we see no basis for characterizing the report as "false." Accordingly we sustain taxpayer's exception and reverse the imposition of the penalty. Otherwise, taxpayer's exceptions are denied.

### Capital Stock Tax

Next, we address the Commonwealth's exceptions to our decision concluding that taxpayer is not liable for capital stock tax for the 1995 tax year. Act 48 amended the definition of "domestic entity" in Section 601 of Article VI (Capital Stock), 72 P.S. § 7601, to include business trusts, thereby subjecting business trusts to capital stock tax liability.[7] As with the CNI tax, prior to the 1994 statutory amendment taxpayer was not subject to capital stock tax because the definition of "domestic entity" did not include business trusts. This amendment also applied "to all *taxable years* beginning on or after January 1, 1995 [emphasis added]." Section 43(1) of Act 48.

Taxpayer filed its return for capital stock tax for the 1995 tax year, indicating that it did not owe any tax because its tax period began before January 1, 1995, and the Act 48 amendments applied only to tax years beginning after January 1, 1995.[8] The Department settled taxpayer's capital stock tax by increasing its liability from $0 to $173,916.00, plus penalties. The Board of Appeals denied taxpayer's petition for resettlement. On appeal, the Board denied resettlement. The Board again concluded that pursuant to Section 401(3)1(k),

---

7. With some exceptions, the capital stock tax applies to "every domestic entity." Section 602(a), 72 P.S. § 7602(a).

8. The same 52–53 week period at issue with respect to the CNI tax applies to the capital stock tax.

taxpayer was deemed a calendar year taxpayer with an ending date of December 31, and thus the Act 48 amendments applied since taxpayer's tax year effectively began on January 1, 1995. This court reversed the Board, however, concluding that Section 401(3)1(k) had not been incorporated into the capital stock tax article of the Code. Therefore, for purposes of that chapter taxpayer remained a fiscal year taxpayer with a taxable year beginning before January 1, 1995. We agree with this conclusion.

Section 601(b) of Article VI, 72 P.S. § 7601(b), specifically incorporates the definition of "taxable year" contained in Section 401 of the CNI tax provisions. Specifically, Section 601(b) provides:

> It shall be the duty of every domestic and foreign entity to make for each *taxable year, as defined in section 401(5)*, a written report verified in accordance with the requirements of the department on a form or forms to be prescribed and furnished by it setting forth the information required. . . .

(Emphasis added). Section 602(a), which pertains to the imposition of tax, provides in turn, "That every domestic entity from which a report is required under Section 601 hereof, shall be subject to, and pay to the department annually, a tax . . . ." 77 P.S. § 7602(a). Thus the General Assembly has unambiguously provided that the definition of "taxable year" set forth in Section 401(5) apply to the payment of capital stock tax. By contrast, conspicuously absent from Section 601(b), and in-

deed all of Article VI, is any reference to Section 401(3)1(k) or other special provision for taxpayers reporting on a 52–53 week basis. Moreover, Section 401(3)1(k) is found in Part I of Article IV. Section 603 provides that "[p]arts III, IV, VI, and VII of Article IV are incorporated by reference into [Article VI] insofar as they are applicable to the tax imposed hereunder." Since the legislature did not incorporate all of Part I, it would appear self-evident that only those provisions which are specifically referenced in Article VI [like Section 401(5) ] will apply therein.

■ Just as the General Assembly could have expressly repealed 401(3)1(k) had it not intended it to apply to the CNI tax, that body could have expressly incorporated 401(3)1(k) were it intended to apply to the capital stock tax. Instead, it left the provision in the former chapter of the Code when it added Section 401(5), but did not include it when it incorporated Section 401(5) into the latter chapter.

■ Finally, we reject the Commonwealth's argument that our conclusion is contrary to a legislative intent that the CNI tax and capital stock tax be reported based upon the same taxable year.[9] Even assuming such a general legislative intent, we note that we are giving effect to the explicit language of the statutory provisions. As we noted in *Allentown Wholesale Grocery:*

> [T]he legislature must be intended to mean what it has plainly expressed. . . . It matters not, in such a case, what the consequences may be; . . . it is not for

---

9. Contrary to the Commonwealth's suggestion, the data upon which the CNI and capital stock taxes are computed will be the same even though the taxable year may differ. In both cases, a taxpayer like Eat'n Park will report income based on the same 52–53 week accounting period. Section 401(3)1(k) does not prohibit reporting of CNI tax on the basis of a 52–53 week period, but merely provides

that those taxpayers who do will be deemed calendar year taxpayers if the period ends near December 31. This deemed taxable year will have consequence for provisions like Act 48 which apply to taxable years beginning on a certain date or which distinguish between fiscal and calendar year taxpayers, but it will not change the taxpayers actual accounting period.

the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.

802 A.2d at 1283, citing *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965) (quotations and citations omitted).

Therefore, as taxpayer's taxable year started before January 1, 1995, it is not subject to capital stock tax for the 1995 tax year. Accordingly, the Commonwealth's exceptions are denied.[10]

### ORDER

AND NOW, this 26th day of March, 2003, the exceptions of Eat'n Park Restaurants Business Trust to this Court's opinion and order in *Eat'n Park Restaurants Business Trust v. Commonwealth,* 803 A.2d 845 (Pa.Cmwlth.2002) are GRANTED in part in that taxpayer's penalty is abated. In all other respects, the exceptions are DENIED.

Further, the exceptions of the Commonwealth to this Court's opinion and order in *Eat'n Park Restaurants Business Trust v. Commonwealth,* 802 A.2d 1280 (Pa. Cmwlth.2002) are DENIED.

---

**10.** In light of our disposition, we need not address taxpayer's request for relief based on a violation of various constitutional rights. However, our analysis of these claims with respect to the capital stock tax would not differ from our analysis regarding the CNI tax.