IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James E. Burkholder             :
d/b/a Whispering Spring Kennel,   :
          Petitioner         :
                                  :
          v.                :   No. 1433 C.D. 2018
                                  :   Argued: April 11, 2019
Department of Agriculture,      :
          Respondent       :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge (P)
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT                FILED: July 12, 2019

James Burkholder, d/b/a Whispering Spring Kennel, petitions for review of an adjudication of the Secretary of Agriculture that imposed a $40,000 civil penalty on Burkholder for not meeting the standards applicable to a commercial kennel. Burkholder contends that the Secretary erred because he has never operated a commercial kennel but, rather, a Class IV kennel, for which he was properly licensed. Burkholder concedes that he exceeded the limits in his license for number of dog transfers, but he contends that the Secretary erred in holding that this violation automatically converted his kennel to a commercial kennel subject to a different set of regulatory standards. Agreeing that the Dog Law[1] did not authorize the sanction imposed, we reverse and remand.

On December 18, 2017, on behalf of the Department of Agriculture's (Department) Bureau of Dog Law Enforcement (Bureau), Christopher Seiple did an unannounced inspection of Burkholder's Whispering Spring Kennel. At the time of

---

[1] Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. §§459-101 - 459-1205.

the inspection, Burkholder held a noncommercial Class IV kennel license and had applied for a Class III kennel license for 2018. Section 206(a) of the Dog Law provides that a "Kennel Class IV" license holder is authorized "[t]o keep or operate a private kennel, pet shop-kennel, research kennel, rescue network kennel, dealer kennel or kennel for a total of 151 to 250 dogs of any age during a calendar year-- $400 per year." 3 P.S. §459-206(a). A "Kennel Class III" license holder is authorized "[t]o keep or operate a private kennel, pet shop-kennel, research kennel, rescue network kennel, dealer kennel or kennel for a cumulative total of 101 to 150 dogs during a calendar year -- $300 per year." *Id.* Seiple found Burkholder's facilities fully complied with the Class IV kennel licensing standards.

When Seiple discovered that Burkholder had transferred 62 dogs over the course of calendar year 2017, Seiple reinspected the kennel, using the licensing standards for a commercial kennel. Seiple concluded that Whispering Spring Kennel did not meet the exacting standards imposed upon a commercial kennel. Accordingly, on December 19, 2017, Seiple issued a "Notice of Violation of Regulations under this Act," listing 16 ways in which Whispering Spring Kennel did not comply with the standards for a commercial kennel. This Notice gave Burkholder until February 28, 2018, to come into compliance with the requirements for a commercial kennel.[2]

On March 7, 2018, Seiple did a follow-up inspection and found that Whispering Spring Kennel had not addressed the 16 items listed in the December Notice. Accordingly, on March 16, 2018, the Department initiated an enforcement

---

[2] The Notice explained that it was not an order or a final action. It stated that "[i]f the Department determines that an enforcement action is appropriate, you will be notified of this action." Reproduced Record at 208a (R.R. __).

2

action against Burkholder by issuing a "Proposed Adjudication and Assessment of Administrative Penalty" to Burkholder, citing the following 11 provisions of Section 207 of the Dog Law and related regulations pertaining to commercial kennels:

A. 3 P.S. §459.207(h)(5) Wardens were unable to verify a written program of veterinary care.

B. 3 P.S. §459.207(i)(1) Wardens observed a few primary enclosures that did not meet the minimum space requirements for the dogs housed within.

C. 3 P.S. §459.207(i)(3)(i) Wardens observed that several dogs over 12 weeks of age were being housed on metal strand flooring.

D. 3 P.S. §459.207(i)(4) Wardens noted all primary enclosures housing adult dogs over 12 weeks of age in the kennel were not provided unfettered clearance to an exercise area.

E. 3 P.S. §459.207(i)(6)(i) Wardens noted all primary enclosures housing adult dogs over 12 weeks of age in the kennel were not provided unfettered clearance from their primary enclosure to an exercise area.

F. 3 P.S. §459.207(i)(6)(ix) Wardens noted all primary enclosures housing adult dogs over 12 weeks of age in the kennel did not have an exercise area on ground level with solid and maintainable flooring.

G. 3 P.S. §459.207(i)(6)(x)(A) Wardens noted all primary enclosures housing dogs over 12 weeks of age in the kennel did not have access to an outside exercise area.

H. 3 P.S. §459.207(i)(8) Wardens were unable to verify veterinary records for all dogs on the premises.

I. 7 Pa. Code §28a.2(b) A written certification under the signature and seal of a professional engineer was not present.

J. 7 Pa. Code §28a.2(c) Without a written certification [from] an engineer, this warden was unable to make the minimum

3

inspection of assuring that the proper mechanical ventilation, auxiliary ventilation, or humidity control system was installed or operational.

K.   7 Pa. Code §28a.2(e) Without a written certification from an engineer, it was unknown to this warden if a proper mechanical ventilation system is installed to meet the standards required by this chapter.

Proposed Adjudication and Assessment of Administrative Penalty, 3/16/2018, Certified Record, Item No. 1 at 1-2 (C.R.___); R.R. 176a-177a.  The Proposed Adjudication alleged a violation of Section 207(a.1) of the Dog Law,[3] which prohibits a kennel from operating without an appropriate license issued under Section 206.

The Proposed Adjudication explained how the proposed penalty was calculated:

---

[3] Section 207(a.1) states as follows:

(a.1) Prohibition to operate; injunction; fines.--

(1) It shall be unlawful for kennels described under section 206 to operate without first obtaining a kennel license from the department.

(2) The secretary shall not approve any kennel license application unless such kennel has been inspected and approved by a State dog warden or employee of the department.

(3) The secretary may file a suit in equity in the Commonwealth Court to enjoin the operation of any kennel that violates any of the provisions of this act.

(4) It shall be no defense to any civil penalty or criminal prosecution under this act that a person operating a kennel failed to properly obtain the appropriate license.

(5) A kennel operator that is applying for a different license because of an increase in the total number of dogs or due to birth of additional dogs in the kennel during a calendar year shall not be in violation, provided the application is filed within seven days of the increase.

3 P.S. §459-207(a.1).

WHEREFORE, pursuant to its Authority under Subsection (2)(1) of Section 903(a) of the Dog Law (3 P.S. §459-903(a)(2)(i)) in determining the final assessed administrative penalty against Burkholder, the PDA hereby proposes to impose an amount of $500 per day for one combined offense, for 80 days (December 18, 2017, through March 7, 2018 (follow-up inspection), or $40,000.00 against Burkholder for the violations described above.

If you choose to appeal this determination you should proceed as set forth in Section C below.

C.R. Item No. 1 at 4; R.R. 203a (emphasis added). Consistent with the Proposed Adjudication's instructions in Section C on how to appeal, Burkholder filed a "Notice of Appeal and Request for Hearing." C.R. Item No. 2 at 2; R.R. 2a.

At the hearing, Seiple testified in support of the Proposed Adjudication. He explained that only a commercial kennel can transfer more than 60 dogs during a calendar year. Whispering Spring Kennel transferred 62 dogs in 2017 even though it did not have a commercial license. Seiple acknowledged that his inspection showed that the facilities were "fine that day." Notes of Testimony, 7/17/2018, at 25 (N.T. __); R.R. 29a. But for exceeding the annual limit on dog transfers, Whispering Spring Kennel complied with the standards for a Class IV Kennel. *Id.* However, Whispering Spring Kennel did not meet the standards for a commercial kennel, in that it lacked certain engineering certifications, solid flooring and appropriate veterinary records. It was on this basis that the Bureau imposed the administrative penalty of $40,000.

Kristen Donmoyer, Director of the Bureau of Dog Law Enforcement, testified that the commercial kennel license was created in 2008 to address the health concerns of kenneled dogs. In her view, for a noncommercial kennel to operate as

a commercial kennel constituted a serious violation. Donmoyer explained that in "December, we typically go to kennels that we feel have historically been close to … going over" the limit of 60 dog transfers. N.T. 79; R.R. 83a. This is why the Department inspected Burkholder's kennel so late in the calendar year. Donmoyer explained that the Department's sanctions were necessary to protect the health of dogs in commercial kennels; to protect members of the public who purchase dogs; and to be fair to the 86 commercial kennels in Pennsylvania "that are regulated and doing things the right way." N.T. 86; R.R. 90a.

Donmoyer explained that if Burkholder was interested in downsizing his operation, he could have closed his kennel; waited a year; and then reopened the type of kennel he wanted. Instead, four puppies were born on December 7, 2017. Donmoyer testified that as of the date of the hearing, the Department considered Whispering Spring Kennel to be a commercial kennel.

Burkholder testified on his own behalf. In 2017, he held a noncommercial Class IV kennel license. This allowed him to hold up to 250 dogs of any age. He applied for a noncommercial Class III kennel license for 2018, which would limit the total number of dogs to 101 to 150 during the calendar year. The only way to downsize was to transfer dogs, and 12 of the 62 transfers had been made to a rescue shelter. As of the time of the hearing, the Department had not granted Burkholder a Class III kennel license.

On September 4, 2018, the Hearing Officer issued a proposed report recommending that Burkholder's appeal be denied. The proposed report concluded that Burkholder was operating a commercial kennel because he (i) was breeding and whelping dogs and (ii) transferred 62 dogs during calendar year 2017. Because

6

Whispering Spring Kennel did not present evidence to show that it satisfied the standards for a commercial kennel, it was in violation of the Dog Law. The proposed report recommended a $40,000 penalty based upon Whispering Spring Kennel's failure to meet the standards for a commercial kennel for the period of December 18, 2017, through March 7, 2018. Neither party filed exceptions.

On further review,[4] the Secretary issued a final adjudication that adopted the Hearing Officer's proposed report. Citing *Keith v. Pennsylvania Department of Agriculture*, 116 A.3d 756, 759 (Pa. Cmwlth. 2015), the Secretary emphasized the health and safety protections provided by the Dog Law. The Secretary concluded:

> Based upon the clear and unambiguous definition of a commercial kennel in the [Dog Law], and in reading the statute in its entirety to give effect to all its provisions, as we must, the Bureau's interpretation and application of Section 459-206, in conjunction with Section 459-102 affords meaning to both provisions consistent with the purpose and intent of the Dog Law to protect dogs bred and raised through commercial kennel operations and those who ultimately purchase them. *The Bureau designation of Whispering Spring Kennel as a commercial kennel is, therefore, reasonable for the purpose of determining the standards applicable to its operations.*

Adjudication, C.R. Item No. 9 at 17 (emphasis added). The Secretary rejected Burkholder's legal argument that the Dog Law and its implementing regulations do not provide for an automatic conversion from one type of kennel to another, responding that the Dog Law did not explicitly prohibit automatic conversions. Finally, the Secretary rejected Burkholder's alternative argument that even if the

---

[4] The Secretary reviewed the proposed report pursuant to 1 Pa. Code §35.226(a)(2) (allowing for review of proposed report by agency head after exceptions are filed or "upon review initiated by the agency head").

Bureau could designate Whispering Spring Kennel as a commercial kennel, the designation had to expire at the end of 2017. Burkholder petitioned for this Court's review.

On appeal,[5] Burkholder argues that the Dog Law does not authorize the automatic conversion of a Class IV kennel to a commercial kennel upon the transfer of the 61st dog in a calendar year. Burkholder argues that Whispering Spring Kennel was in good working order and clean and none of the dogs were neglected. He explains that only because the kennel was downsizing did he exceed the transfer limit of 60 dogs per year, 12 of which were sent to a rescue shelter. Burkholder challenges the Secretary's conclusion that by operation of law Whispering Spring Kennel became a commercial kennel on December 12, 2017, when he transferred the 61st dog and instantly became obligated to comply with the standards for a commercial kennel. Burkholder argues that the Department's expansive read of the Dog Law offends fundamental principles of statutory construction and due process.

This case turns on the meaning of the Dog Law. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa. C.S. §1921(a). If the language of the statute is clear and unambiguous it must be given its plain and obvious meaning. *Eat'n Park Restaurants Business Trust v. Commonwealth*, 821 A.2d 160, 167 (Pa. Cmwlth. 2003). Although one is admonished to listen to what a statute says, one must also listen attentively to what it does not say. *Kmonk-Sullivan v. State Farm Mutual*

---

[5] This Court's review determines whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. 2 Pa. C.S. §704.

*Automobile Insurance Co.*, 788 A.2d 955, 962 (Pa. 2001). It is not the role of a court, by interpretation, to add a requirement to a statute that the legislature did not see fit to include. *JP Morgan Chase Bank N.A. v. Taggart*, 203 A.3d 187, 198 (Pa. 2019).

The Department asserts that the moment a kennel transfers more than 60 dogs, it becomes a commercial kennel that is subject to all of the enhanced regulatory standards applicable to a commercial kennel. It bases this position on Section 102 of the Dog Law, which defines a "commercial kennel" as follows:

> A kennel that breeds or whelps dogs and:
>
> > (1) sells or transfers any dog to a dealer or pet shop kennel; or
> >
> > (2) sells or transfers more than 60 dogs per calendar year.

3 P.S. §459-102. Section 102 does not define a "noncommercial kennel," but it does define a "private kennel," "pet shop-kennel," "research kennel," "rescue network kennel," "dealer kennel" and "kennel." *Id.* Any of these different types of kennels can hold a "Class IV Kennel" license, and any can breed or whelp dogs.[6]

The Dog Law is not a model of clear drafting. Nevertheless, we are bound to give meaning to the General Assembly's intention and are guided, as always, by the words it chooses to use. The Dog Law defines a Class IV Kennel in terms of the number of dogs it can house. It is silent on the number of dogs it can

---

[6] Notably, the record does not identify which of these types of kennels describes Whispering Spring Kennel.

9

house and breed, and it is silent on the number of dogs it may transfer in a calendar year.

Section 102 of the Dog Law defines a commercial kennel, *inter alia*, as one that transfers more than 60 dogs a year. 3 P.S. §459-102. Section 206(a) of the Dog Law[7] establishes a series of commercial kennel classes on the basis of how

---

[7] Amendments to Section 102 and Section 206(a) were made in the Act of October 9, 2008, P.L. 1450. Section 206(a) contains a list of kennel license classifications:

Kennel Class I.--To keep or operate a private kennel, pet shop-kennel, research kennel, rescue network kennel, dealer kennel or kennel for a total of 50 dogs or less of any age during a calendar year--$75 per year.

Kennel Class II.--To keep or operate a private kennel, pet-shop kennel, research kennel, rescue network kennel, dealer kennel or kennel for a total of 51 to 100 dogs of any age during a calendar year--$200 per year.

Kennel Class III.--To keep or operate a private kennel, pet shop-kennel, research kennel, rescue network kennel, dealer kennel or kennel for a total of 101 to 150 dogs of any age during a calendar year--$300 per year.

Kennel Class IV.--To keep or operate a private kennel, pet shop-kennel, research kennel, rescue network kennel, dealer kennel or kennel for a total of 151 to 250 dogs of any age during a calendar year--$400 per year.

Kennel Class V.--To keep or operate a private kennel, pet shop-kennel, research kennel, rescue network kennel, dealer kennel or kennel for a total of 251 to 500 dogs of any age during a calendar year--$500 per year.

Kennel Class VI.--To keep or operate a private kennel, pet shop kennel, research kennel, rescue network kennel, kennel or dealer kennel for a total of more than 500 dogs of any age during a calendar year--$750 per year.

Boarding Kennel Class I.--To keep or operate a boarding kennel having the capacity to accommodate a total of 1 to 10 dogs at any time during a calendar year--$100 per year.

Boarding Kennel Class II. --To keep or operate a boarding kennel having the capacity to accommodate a total of 11 to 25 dogs at any time during a calendar year--$150 per year.

Boarding Kennel Class III.--To keep or operate a boarding kennel having the capacity to accommodate 26 or more dogs at any time during a calendar year--$250 per year.

Nonprofit Kennel.--To keep or operate a nonprofit kennel--$25 per year.

many dogs are kenneled in a calendar year. 3 P.S. §459-206(a). For example, a "Kennel Class C-1" license is one that authorizes a kennel "[t]o keep or operate a commercial kennel for a total of 50 dogs or less of any age during a calendar year - $75 per year." 3 P.S. §459-206(a). The definition of "commercial kennel" in Section 102, together with the establishment of different categories of commercial licenses in Section 206(a), establish that a kennel must have one of the enumerated commercial licenses in order to transfer more than 60 dogs a year. By inference, a "Kennel Class IV" may transfer up to 60 dogs a year but no more. We accept this part of the Secretary's construction of the Dog Law.

This means that Whispering Spring Kennel violated the Dog Law when it transferred two dogs in excess of the 60-dog transfer limit in 2017 for a Kennel Class IV. Specifically, it did not have "the appropriate license" when it transferred the 61st and 62nd dog in 2017. 3 P.S. §459-207(a.1)(4).

However, Section 102 of the Dog Law does not support the Department's contention that Whispering Spring Kennel automatically became a

---

Kennel Class C-I.--To keep or operate a commercial kennel for a total of 50 dogs or less of any age during a calendar year--$75 per year.

Kennel Class C-II.--To keep or operate a commercial kennel for a total of 51 to 100 dogs of any age during a calendar year--$200 per year.

Kennel Class C-III.--To keep or operate a commercial kennel for a total of 101 to 150 dogs of any age during a calendar year--$300 per year.

Kennel Class C-IV.--To keep or operate a commercial kennel for a total of 151 to 250 dogs of any age during a calendar year--$400 per year.

Kennel Class C-V.--To keep or operate a commercial kennel for a total of 251 to 500 dogs of any age during a calendar year--$500 per year.

Kennel Class C-VI.--To keep or operate a commercial kennel for a total of more than 500 dogs of any age during a calendar year--$750 per year.

3 P.S. §459-206(a).

commercial kennel on December 12, 2017, and for all time thereafter. First, a kennel license lasts 12 months. 3 P.S. §459-206(a). Second, the Dog Law states that a kennel may not convert its kennel operation without a license application and approval. For example, Section 207(a.1)(5) states:

> A kennel operator that is applying for a different license because of an increase in the total number of dogs or due to birth of additional dogs in the kennel during a calendar year shall not be in violation, *provided the application is filed within seven days of the increase*.

3 P.S. §459-207(a.1)(5) (emphasis added). The obligation of the kennel to apply for a different license stands in stark contrast to the Department's theory of an automatic license conversion. That a change in a kennel's operations triggers the need for a license application is inconsistent with, not supportive of, an automatic conversion of a kennel.

The Dog Law contains specific penal provisions in Section 207(a.2) and (a.3) of the Dog Law; they state, in relevant part, as follows:

> **(a.2) Civil penalties and remedies.--**The following shall apply to civil penalties and remedies for unlicensed kennels:
>
> (1) In addition to proceeding under any other remedy available at law or in equity for a violation of a provision of this act or a rule or regulation adopted or order issued under this act, the secretary may assess a civil penalty, in addition to any penalty under section 903(c), against an unlicensed kennel of not less than $500 nor more than $1,000 for each day it operates in violation of this act. The penalty shall be premised on the gravity and willfulness of the violation, the potential harm to the health and safety of the animals and the public, previous violations and the economic benefit to the violator for failing to comply with this act.
>
> * * *

12

**(a.3) Cease and desist order.—**

> (1) The secretary may provide a written order to cease and desist operating to an owner who is operating a kennel without a license. The order shall set forth the general factual and legal basis for the action and shall advise the affected person that within ten days of receipt of the order, he may file with the secretary a written request for an administrative hearing.

3 P.S. §459.207(a.2), (a.3). The Department could have pursued any of these actions against Burkholder for his unlicensed conduct, *i.e.*, the transfer of two dogs in 2017 in excess of the limits of his license.

An administrative agency's supervisory authority "is not without limitation." *Aetna Casualty and Surety Co. v. Commonwealth, Insurance Department*, 638 A.2d 194, 200 (Pa. 1994). Rather, "an administrative agency can only exercise those powers which have been conferred upon it by the Legislature in clear and unmistakable language." *Id*. (citation omitted). The Dog Law has not authorized the Department to force a kennel to undertake substantial upgrades when it violates the parameters of its license. The Department can impose civil penalties, or it can order the kennel to cease and desist from exceeding its transfer limit. However, it cannot impose sanctions that are not expressly authorized in the Dog Law. Section 207(a.2) and (a.3) are penal provisions subject to a narrow construction. *See* 1 Pa. C.S. §1928(b)(1) ("All provisions of a statute of the classes hereafter enumerated shall be strictly construed: (1) Penal provisions.").

The Department's contrary argument is not persuasive. It argues that the Dog Law's definition of a commercial kennel triggers an automatic conversion of a noncommercial kennel to a commercial kennel upon the transfer of the 61st dog before December 31 of any license year. This is heavy lifting for a simple statutory

13

definition of "commercial kennel." Nevertheless, the Department argues that its interpretation is entitled "to great weight." Department Brief at 9. However, deference to an agency's interpretation is triggered only where the statute in question is ambiguous. *Velocity Express v. Pennsylvania Human Relations Commission*, 853 A.2d 1182, 1185 (Pa. Cmwlth. 2004) ("[W]ith regard to ambiguous statutory language, courts are to give strong deference to an administrative agency's interpretation of a statute," but "deference is unwarranted" where the agency's "interpretation is unwise or erroneous.") (quoting *Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board*, 763 A.2d 962, 968 (Pa. Cmwlth. 2000)). Here, the Secretary specifically concluded that there was nothing ambiguous in the statutory definition of "commercial kennel." Adjudication, C.R. Item No. 9 at 17. In any case, the Department's interpretation is erroneous. Simply, there is no ambiguity and no basis for the Court to defer to the Department's interpretation.

For all of these reasons, we hold that the Secretary erred in subjecting Burkholder to the standards for a commercial kennel and imposing a $40,000 administrative penalty for not meeting those standards over the course of three months. We agree with the Secretary that Burkholder violated Section 207(a.1) of the Dog Law by twice exceeding the limit of 60 dog transfers in a calendar year, and this may subject him to the sanctions authorized by the Dog Law. The Secretary can consider an appropriate sanction, if any, on remand.

For these reasons, we reverse the Secretary's adjudication and remand this matter for further proceedings consistent with this opinion.

_____
MARY HANNAH LEAVITT, President Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James E. Burkholder                  :
d/b/a Whispering Spring Kennel,      :
            Petitioner               :
                                     :
      v.                             :     No. 1433 C.D. 2018
                                     :
Department of Agriculture,           :
            Respondent               :

## **O R D E R**

AND NOW, this 12th day of July, 2019, the order of the Department of Agriculture dated September 25, 2018, is hereby REVERSED and the matter is REMANDED for proceedings in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge